IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED TRANSPORTATION UNION**
**LOCAL 1745, et al.,**

      **Plaintiffs,**

v.                                                          CIV. No. 96-716 LH/DJS-ACE

**CITY OF ALBUQUERQUE, et al.,**

      **Defendants,**

and                                                      Consolidated With

**JIMMY S. ANDERSON, et al.,**

      **Plaintiffs,**

v.                                                          CIV. No. 99-208 MV/LFG-ACE

**CITY OF ALBUQUERQUE, et al**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Plaintiffs' Motion for an Order Requiring Payment of Back Pay and Liquidated Damages (Docket No. 282). Both sets of Plaintiffs in these two consolidated lawsuits request this relief. The Court, having considered the pleadings on file, as well as relevant case law, for the reasons that follow, concludes that Plaintiffs' motion shall be

**granted in part and stayed in part**. It is granted in that the issue of backpay, as previously awarded by this Court, shall be referred to a Special Master, for an accounting determination of backpay due to Plaintiffs. Plaintiffs' motion is however stayed insofar as it seeks liquidated damages from the date of the Tenth Circuit opinion forward.

This matter also comes before the Court on Plaintiffs' Motion for an Order Sending Unresolved Issues to Arbitration (Docket No. 278). For the reasons that follow, this motion shall be **denied**.

**I. Motion for an Order Requiring Payment of Backpay and Liquidated Damages**

    **A. Background**

On October 23, 1997, this Court entered an order in *United Transportation Union Local 1745, et al.,* CIV No. 96-716 LH/DJS-ACE ("Lawsuit I"), which was later affirmed on appeal by the Tenth Circuit. *See United Transportation Union Local 1745, et al. v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999). In essence, this Court's order provided that time spent by Plaintiffs in traveling on City operated shuttles to and from relief points at the beginning and end of their split shift periods is compensable; that times spent which is one hour or more between split runs is not compensable; and that the Defendants, in denying the above compensation to Plaintiffs, had acted in good faith, and thus, liquidated damages were not recoverable.

As above-noted, Plaintiffs filed the current motion for backpay, seeking compensation for their travel time pay, as awarded by this Court and affirmed by the Tenth Circuit.[1] Plaintiffs

---

[1] Plaintiffs in *Anderson v. City of Albuquerque*, CIV No. 99-208 MV/LFG ("Lawsuit II"), although not originally part of Lawsuit I and its subsequent appeal, have been consolidated with Lawsuit I. These Plaintiffs made basically the same claims under the Fair Labor Standard Act ("FLSA"). Consequently, they are eligible for

contend that, since the time of the Tenth Circuit affirmance, the City has unreasonably refused to calculate and pay the overtime compensation owed to them.

In its response to Plaintiffs' motion for back pay, the City states that records relative to the calculations used to determine back wages for the compensable travel time on shuttles have been available to Plaintiffs throughout the litigation. The City contends that its records, relative to time spent on shuttles after the first split shift and before the second split shift, are adequate. It maintains that it can be determined, to a reasonable certainty, how much time an individual driver spent on a particular shuttle. The City maintains that the real issue doesn't relate to the shuttle time, but to how often drivers rode the shuttle. At page 5 of its brief, the City states that it has assumed that drivers rode the compensable shuttle trip every day.

The City represents that it followed the same approach to determine compensable travel time in Lawsuit I as it did in Lawsuit II. The City also represents that it reviewed the two remaining liability issues, namely split shift periods of under one hour and extra board driver compensable shuttle travel time, determined these to be compensable for settlement purposes, and submitted charts with these figures to Plaintiffs' counsel on August 20, 2000. The City also tendered the bases for these charts to Plaintiffs' counsel on September 14, 2000.

### B.  Necessity for a Special Master

The Court is cognizant that reference to a special master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated. In actions to be tried without a jury, save in matters of account and of difficult

---

the same award of backpay, and will therefore be included in the relief granted by this Memorandum Opinion and Order.

computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.  FED. R.CIV.P. 53 (b).  In Lawsuit I, no jury was requested, although one was requested in Lawsuit II.  Both matters are complicated, involve matters of account and of difficult computation of damages.   I conclude that reference to a special master is justified under Rule 53, by the express factors mentioned in the rule itself, as explained further below.

Quantification of the backpay item of damages remain in both Lawsuit I and Lawsuit II. This is a complicated accounting issue. On September 14, 2000, the City submitted to Magistrate Judge Svet charts showing the bases for its liability. (Nov.  6, 2000 Tr. at  4).  Plaintiffs' counsel stated at that time that he could not itemize Plaintiffs' damages because the city's records were inadequate.  (*Id*.)  The adequacy of these records can best be determined by a Special Master in the context of his/her actual review of figures in the process of determining amounts necessary to compensate Plaintiffs for the period of work time involved.  If necessary, the Special Master can order further records from the City.  This Court is not in a position to review the actual damages numbers of the parties, nor would it be appropriate for this Court to consider figures offered in settlement, given its role as trial judge in this matter.

It appears to the Court that settlement of these claims has been at a standstill die to Plaintiffs' position that the City must provide more detailed records, coupled with the City's position that Plaintiffs' counsel was unreasonably refusing to settle.  Judge Svet ordered Plaintiffs to provide a settlement figure, however because Plaintiffs were not is possession of what they considered to be adequate records, they indicated that they had no way of calculating what fair settlement figures would be.  It is the belief of the Court that the parties will continue this circular reasoning without the intervention of a Special Master.

As noted above, I conclude that this litigation involves matter of account and of difficult computation of damages. It appears that compilation of the appropriate figures is the primary remaining task. Furthermore, I conclude that reference to a Special Master is justified because of the entrenched position of the parties and due to the fact that no progress was made during hearings with the magistrate assigned to this case.

### C.  Guidelines and Specific Scope of Work for Special Master

Having concluded that the appointment of a Special Master is justified,  therefore, it is appropriate to provide guidance as to how appropriate damages figures must be determined, for the benefit of the parties and of the Special Master. The difficulty of an employee's burden of proving work for which he was not properly compensated was addressed in *Baker v. Barnard Construction Co., Inc.*, 146 F.3d 1214 (10th Cir. 1998). The *Baker* Court quoted the case of *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85-86 (10th Cir. 1983), which described the burdens of the parties in litigating FLSA claims:

> The employee bears the burden of proving he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). However, employers have a duty to keep accurate records. If employers do not keep accurate records the employee's burden is extremely difficult. In order to prevent the employee from being penalized by the employer's failure to keep adequate records, the Supreme Court held in *Anderson* that an employee carries his burden by proving that he has "in fact performed work for which he was improperly compensated and ... [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*  Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence. If the employer does not rebut the employee's evidence, then damages may be awarded even thought the result is only approximate. The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law. *Id.* at 687-88, 66 S.Ct. at 1192.
>
> Plaintiffs cite the case of *Watkins v. Hudson Coal Co.*, 151 F.2d 311 (3d Cir. 1945),  in

which there were problems involving claimant's identity as employee of defendant, the question of days and hours he worked, and calculation of the precise amount of money that should be awarded to claimant. In citing this case, Plaintiffs implicitly acknowledge that the determination of specific damages may necessarily be speculative, and that referral of such issues of the accounting phase and related matters to a special master may be appropriate. Furthermore, relying on the case of *Handler v. Thrasher*, 191 F.2d 120 (10th Cir. 1951), Plaintiffs acknowledge that if the employer's records do not reflect the *precise amount of work performed*, then the resulting compensation to the employee may necessarily be an approximate amount.

Where the determination of specific damages may be speculative, the trial judge may refer the accounting phase of the case and related matters to a special master. *Brock v. Ing*, 827 F.2d 1426 (10th Cir. 1987)(referral to special master was proper where approximately 52 employees had back pay or overtime due from employer whose records were incomplete and job of piecing together evidence had to be done by someone knowledgeable in accounting matters and familiar with business records in general.)   Reasonable estimates are permitted under the FLSA where actual figures are difficult to determine or their precise determination would be unreasonably burdensome from an administrative standpoint.

The Court has determined one important legal issue insofar as the employees' burden of proof is concerned: the employees have proven that they performed work for which they were not properly compensated.   Furthermore they have produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.* at 687.

Even though this Court has determined that Plaintiffs are entitled to compensation for time

spent traveling on City shuttles to and from relief points at the beginning and end of their split shift periods, issues remain as to the number of days and hours each employee spent on City shuttles, and the calculation of the amount of money to which drivers might be entitled. According to the City's briefs, the real remaining issue is how often drivers rode the shuttle. For settlement purposes, according to its brief, the City assumed, for prior settlement purposes, that the drivers rode a compensable shuttle trip daily. If the City will not enter into such a stipulated assumption again, the Special Master shall make reasonable estimations as to the frequency of such trips. At this juncture, given that Plaintiffs have met their initial burden and because liability has been established, I conclude that it is now the City's burden to provide reasonably accurate and complete records to enable the Special Master to make all necessary determinations. As above-noted, reasonable estimation by the Special Master may be required.

The Special Master's scope of work will be covered in greater detail in the Reference Order that will ultimately be entered by the Court. In reading the transcripts of hearings with Judge Svet, and in reviewing the briefs of the parties, the Court has noted that some of Plaintiffs' arguments appear to present a stumbling block to resolution of the travel time issue. Because these arguments appear to be impeding resolution of this matter, the Court will address them here, to give the Special Master and the parties the best possible guidance as to parameters for the scope of work to be undertaken by the Special Master, and with the intent that s/he will not be presented with unresolved legal issues.

Plaintiffs have contended that there are "four glaring errors" in the City's accounting. These "errors" are more fully addressed in a Memorandum Opinion and Order filed simultaneously with this one in which I concluded that the doctrine of *res judicata* bars Plaintiffs

7

in Lawsuit II from attempting to relitigate the following claims: (a) time spent which is one or more hours between "split shifts"; (b) shuttle time going to a relief point for their first or only bus run of the day and from their last or only bus run of the day; (c) liquidated damages[2]; (d) the applicability of the two-year statute of limitations; and (e) time spent walking to and from and waiting at relief points. The Special Master shall not consider compensation for these claims.

Plaintiffs also mention that the City's spreadsheet purports to document deductions for "guarantee time",[3] and contend that there is no way to figure that time from the information provided by the City. This topic has not otherwise been the topic of any motions before the Court. The Special Master will be instructed to evaluate the reasonableness of this deduction in his/her determination of backpay wages.

To date, Plaintiffs have been awarded travel time on shuttles to and from relief points at the beginning and end of their split shift periods. In addition there are two remaining liability issues: split shift periods of under one hour and extra board driver compensable shuttle travel time. For settlement purposes, the City determined that these latter two issues would be compensable. (Defs' Response Brief at 4-5). In the event that the City takes the same position with the Special Master on the compensability of these two categories, which the Court encourages it to do, then damages for these three categories shall be the precise focus of the Special Master in his/her determination of wages due to Plaintiffs at this juncture.[4]

---

[2] *Res judicata* bars relitigation of the liquidated damages issue prior to the date of remand from the Tenth Circuit however. This is explained more extensively later in this Memorandum Opinion and Order.

[3] Apparently the City deducts overtime pay for any week in which the driver worked less than the ordinary five-day week.

[4] If the City will not again regard split shift periods of under one hour and extra board driver shuttle travel time as being compensable, for purposes of the sessions with the Special Master, then the Court will evaluate

Plaintiffs shall be limited to this recovery. They did not sue for and/or recover for any waiting, walking or other types of activity, and are barred from bringing up such claims at this late date. In addition, Counts 3 and 4 in Lawsuit II have been dismissed by memorandum opinions and orders filed simultaneously with this one (*See* Docket No. 294 and 295), and as already noted, several claims are barred by *res judicata*.

### D. Liquidated Damages

Plaintiffs again seek an award of liquidated damages "for the City's lengthy delay and continuing failure to pay the amounts owed." Mem. in Sup. of Pltfs' Mot. at 10. As explained below, this motion is stayed, pending the report to the Court from the Special Master.

Plaintiffs initially appealed this Court's ruling that denied Plaintiffs' request for liquidated damages. Plaintiffs apparently abandoned this issue on appeal, but have now filed yet another request for liquidated damages, based on the City's alleged undue delay in payment of wages owed under the FLSA by the City.

This Court is aware that Section 216's provision for liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Hultgren v. County of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990). The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 20 U.S.C. § 216(b). However, if the employer had a good faith belief that its actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. *See* 29 U.S.C. § 260; *see also Department of Labor v. City of*

---

this liability once it receives the Report of the Special Master.

9

*Sapulpa*, *Okl*., 30 F.3d 1285, 1289 (10th Cir. 1994).

The Court is well aware that Lawsuit I was affirmed by the Tenth Circuit in May of 1999 and that it has taken an inordinate amount of time to get this matter of travel time resolved. There have been many factors involved in this delay however, including the Court's own backlog. Further delay was occasioned when this matter was sent to the magistrate who did not narrow the issues in the case. Further, it is the belief of the Court that Plaintiffs have insisted upon a higher degree of precision of record-keeping by the City than is realistic, while at the same time citing caselaw that notes the impossibility of exactitude in this regard. It is however, impossible, from this Court's position, without the benefit of reviewing the actual documents, to know how diligent and cooperative the City has been in its maintenance and production of records.[5] The Court will not currently entertain evidence as to availability of liquidated damages resulting from the City's delay in payment, given the above-mentioned other factors for this delay. The Court urges both parties to operate in good faith and cooperation from this date forward. Once the Report of the Special Master is received, the Court may consider evidence as to whether or not Plaintiffs may be entitled to liquidated damages, only from the date of the Tenth Circuit opinion, on May 28, 1999, forward.

## II.  Motion for an Order Sending Unresolved Issues to Arbitration

Although this matter was filed for relief under the Fair Labor Standards Act, in this motion Plaintiffs seek relief under collective bargaining agreements, arguing that the disputes before this

---

[5] The Special Master will be instructed to report to the Court as to the degree diligence and cooperation exhibited by the City in its maintenance and production of records, and as to whether or not the records previously produced were or were not adequate.

10

Court are part of a long-standing labor dispute between the City and Union Local 1745. Plaintiffs request that the Court send the undecided issues in this case to arbitration on the grounds that such an approach would save the time and resources of the courts and of the parties.

Considerable time and resources of this Court and of the Tenth Circuit have already been invested in this case and essential legal determinations have been made. It is the belief of the Court that resolution of the appropriate amounts of unpaid wages will be expeditiously determined by the Special Master, who will be appointed in the near future. The Special Master will operate as an arbitrator to some extent, especially in instances if s/he determines that reasonable estimates are required. The Special Master will be authorized to determine what the Plaintiffs seek an arbitrator to determine: the amount of City liability for as yet uncompensated travel time.

This is the most expeditious and economical approach at this juncture. Plaintiffs chose this forum and have presented nothing to this Court, collective bargaining agreements or otherwise, that overrides the approach outlined in this Memorandum Opinion and Order.

Plaintiffs' Motion for an Order Sending Unresolved Issues to Arbitration (Docket No. 278) is therefore **denied.**

**WHEREFORE,** it is hereby ordered that Plaintiffs' Motion for an Order Requiring Payment of Back Pay and Liquidated Damages (Docket No. 282) is **granted in part and stayed in part.**

**IT IS THEREFORE ORDERED** that, a Special Master shall be appointed to this matter. On or before **October 17, 2001**, counsel for the parties shall confer, and strive to agree upon a nomination for the position of Special Master in this matter. If unable to agree on an

appropriate nominee, counsel for the parties shall each submit a list of nominees of one or more persons to serve as Special Master in this matter, together with a brief biography and resume of all persons recommended, including expertise in the issues remaining in the litigation and his/her hourly rate.  These lists shall be submitted to the Court by both parties no later than **October 24, 2001**.  Once the name of an appropriate Special Master is determined by the Court, it shall enter an Order of Reference pursuant to FED.R.CIV.P. 53.  The fees of the Special Master shall be borne one-half by the Plaintiffs collectively, and one-half by Defendant City of Albuquerque, unless it is determined that the City has not operated in good faith, as outlined above, in which case the City will bear all fees of the Special Master.

As above-noted, the City, for purposes of settlement, tendered to Judge Svet, figures relating to split shift periods of under one hour and extra board driver compensable shuttle travel time.  According to its brief, the City determined, apparently for settlement purposes only, that time spent on a split shift of less than fifty minutes would be regarded as compensable, as would extra board driver shuttle time.  On or before **October 17, 2001**, the City shall indicate to the Court, in writing, whether it is willing to stipulate to these same figures, for consideration by the Special Master, for these two areas of liability.  In the interest of a quick resolution of these pending issues, the City is encouraged to do so.

To date, these Plaintiffs have been awarded travel time on shuttles to and from relief points at the beginning and end of their split shift periods.  In addition there are two remaining liability issues: split shift periods of under one hour and extra board driver compensable shuttle travel time. Once the Court receives an indication from the City as to how it intends to proceed on these last two categories, one way or the other, it will be able to properly instruct the Special

Master as to the proper scope of determination for damages for Plaintiffs in Lawsuits I and II. These three categories are the extent of relief to which these Plaintiffs will be entitled.

    **IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**