UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**UNITED TRANSPORTATION UNION**
**LOCAL 1745, et al.,**

        **Plaintiffs,**

**v.**                                              **CIV No. 96-716 LH/DJS-ACE**

**CITY OF ALBUQUERQUE, et al.,**

        **Defendants,**

**and**

**JIMMY S. ANDERSON, et al.,**

        **Plaintiffs,**

**v.**                                              **CIV No. 99-208 MV/LFG-ACE**

**CITY OF ALBUQUERQUE, et al.**


## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on the City's Second Motion to Enforce Settlement Agreement (Docket No. 335). The Court, having considered the motion, briefs and applicable caselaw, concludes that the motion is **taken under advisement, pending findings and recommendations from the Special Master.**

1

Defendants' motion seeks to enforce a purported settlement agreement of all claims that were raised or could have been raised relative to compensable travel time in City operated shuttles during split periods of service when Plaintiffs were present as extra board motor coach operators.

Plaintiffs characterize this issue as being about overtime compensation for "extra board drivers." They resist the motion on the grounds that (1) amounts owed under the Fair Labor Standards Act ("FLSA") may not be compromised or waived; (2) the settlement agreement cannot be enforced because it is not all inclusive; and, (3) Mr. Pennington did not have the appropriate authority to settle Plaintiffs' claims.

The Court has analyzed all arguments of the parties, but focuses on the issues of whether a settlement agreement was in fact reached, if so, whether or not it is enforceable under the FLSA.

**I. Existence of Settlement Agreement**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). This is true even though the underlying cause of action is federal. *United Comm'l Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). New Mexico law favors the settlement of disputed claims. *See Gonzales v. Atnip*, 692 P.2d 1343, 1344 (N.M.Ct.App. 1984). Absent proof of a violation of the statute of frauds or other valid defense, an oral settlement is as enforceable as a written one. *See Rojo v. Loeper Landscaping, Inc.*, 759 P.2d 194, 196 (N.M. 1988). "A party seeking relief from . . . a settlement has the burden of persuasion." *Gonzales*, 692 P.2d at 1344.

In support of their motion, Defendants filed the affidavit of Edward W. Bergmann, counsel for the City.  Although Plaintiffs argue in their brief about certain aspects of this affidavit, they have filed no materials, such as a counter-affidavit, to factually dispute the contents of the Bergmann affidavit.  Accordingly, primarily based upon the contents of this affidavit, the Court accepts as true the following facts, relevant to the purported settlement agreement between the parties.

Justin Pennington entered an appearance in this case on behalf of Plaintiffs on June 10, 2002. (Docket No. 308).  Following his entry of appearance, Pennington approached Bergmann and suggested initiation of settlement discussions. (Bergmann Aff. ¶ 6).  Pennington and Bergmann agreed that there would be settlement negotiations on the extra board travel time as a separate issue. (*Id*. ¶ 5).  These negotiations were set, by agreement of all counsel, for December 16 and 17, 2002. (*Id*.).  Proceedings before the Special Master were postponed pending the settlement negotiations. (*Id.*).

Settlement negotiations began on December 16, 2002. (*Id*. ¶ 7).  On that date, both Pennington and Paul Livingston were present on behalf of Plaintiffs.  (*Id*. ¶ 7).  The next day, only Pennington was present on behalf of Plaintiffs. (*Id*. ¶ 8).  The parties exchanged settlement proposals until Plaintiffs, through Pennington, gave the City their bottom line settlement figure of $57,000. (*Id*. ¶ 10).  Kolberg, counsel for the City, stated that he would strongly recommend acceptance of this settlement figure, but that he would make the recommendation only subject to three conditions.[1] Pennington and Union President Robert Gutierrez agreed to these conditions and indicated that they

---

[1] These conditions were:  (1)  that Plaintiffs were committed to the settlement figure, it was a final figure and would not be changed;  (2)  that Pennington and Bergmann would seek to resolve the issue of split periods of less than one hour;  and, (3) that a settlement conference before Magistrate Judge Svet would be held on January 16, 2003, on the regular driver travel time issue, instead of proceeding before the Special Master on this issue.

had the authority to reach the settlement. (*Id*. ¶ 12). Other Plaintiffs present also indicated their acceptance and shook hands across the table at the end of the meeting. (*Id*.). Bergmann agreed to advise Pennington as soon as the settlement was fully approved by the City. On January 10, 2003, Bergmann wrote to Pennington to confirm the settlement of the parties reached on December 17, 2002. (*Id*. ¶12). The City issued its settlement check on January 13, 2003. (*Id*. ¶ 12; *See* Ex. E to Bergmann Aff.).

Following Pennington's entry of appearance on behalf of Plaintiffs, the City was never advised by Livingston or by any Plaintiff, that there was a limitation on the authority of Pennington in his capacity as Plaintiffs' representative. (Bergmann Aff. ¶ 13). Throughout the settlement negotiations, Pennington, in the presence of several representative Plaintiffs, indicated he had authority to settle the extra board trave time issue on behalf of the Plaintiffs. (*Id*.). Pennington withdrew as counsel of record in this case on January 22, 2003 (Docket No. 338).

Insofar as the formation of a settlement agreement is concerned, Plaintiffs contest only the authority of Pennington to act on their behalf in a binding fashion. On page 11 of the Response Brief, Plaintiffs state that this Court's enforcement of the settlement agreement "appears to present problems" regarding the "representational authority of Mr. Pennington," however they make no explanation and give no factual basis for such an assertion.

Given the record before the Court, I am convinced that it amply supports a finding that a settlement agreement was reached as the product of Plaintiffs' knowing, voluntary and intelligent decision, as represented by Pennington, who acted with apparent and actual authority. The Court has neither received nor reviewed the terms of the actual agreement. Based upon the Bergmann affidavit however, I am convinced that the terms of the agreement represented a meeting of the minds of the

parties concerned. Applying New Mexico law regarding the formation and construction of a contract, I am convinced that such a settlement agreement was reached.

## II.  Enforceability of Settlement Agreement

I will next address Plaintiffs' arguments that a settlement agreement in this FLSA context is not enforceable.

Although waivers of FLSA rights are generally invalid, Section 216 of the FLSA allows an employee to waive his or her FLSA rights through two specific methods. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53, 1355 (11th Cir. 1982). The method relevant to this case is Section 216(b), which allows for a judicially approved stipulated judgment where the employee files suit directly against the employer.[2]

Any waiver of FLSA rights must arise from a bone fide dispute regarding FLSA coverage or amount due. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Furthermore, a settlement may not be negotiated by the employer directly with the employees outside the adversarial context of a lawsuit brought by the employees. This "would be in clear derogation of the letter and spirit of the FLSA." *Lynn's Food Stores* at 1354 (citations omitted).

An employee's rights under the FLSA may not be waived by an unsupervised release. This is based on Congressional recognition  that "due to the unequal bargaining power" between employees and employers, mandatory legislation was necessary to prevent private contracts between employees and  employers that endanger national health and commercial efficiency. *Brooklyn Sav.*

---

[2] The Court notes that Section 216(c) also permits waiver when the Secretary of Labor supervises the payment in full of a settlement reached between the employee and the employer.

*Bank* at 706. In particular, the legislative history of FLSA shows that Congress intended to protect employees from substandard wages and excessive work hours. *Id.*

The purported settlement agreement arose pursuant to this litigation where the employees have filed suit directly against their employer and this is a dispute about the amount due. Accordingly a settlement agreement resulting in a waiver of FLSA rights could be permissible, in the event that it is judicially approved.

As noted above, no material facts concerning the *existence* of an agreement to settle are in dispute. Accordingly, an evidentiary hearing on that specific issue is not necessary. *See United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). The Court has herein concluded that the parties validly entered into a settlement agreement.

Defendants incorrectly argue however that there is no need whatsoever for an evidentiary hearing (Reply Brief at 9). This argument ignores the requirement of judicial approval of the settlement agreement. Admittedly, this settlement agreement was reached in the adversarial context of this lawsuit which was brought by the employees. However, the Court deems actual review by the Court of the terms of the agreement a prerequisite to any enforcement of said agreement. Review by the Court is necessary to ensure that the agreement is fair, and that it is not ambiguous in any way, *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127 (10th Cir. 1980). *See also United States v. Hardage*, 982 F.2d 1491 (10th Cir. 1993).

According to her January 30, 2003 report, the Special Master has reviewed a great deal of evidence on the extra board shuttle travel time issue and has much greater familiarity with it than does this Court. Now that the Court has concluded that there was a valid settlement, the Special Master is instructed to conduct an evidentiary review of the terms of the settlement agreement and to conduct

a hearing as to its fairness, and as to whether or not any material facts concerning its terms are in dispute. At that time, the Special Master shall make findings and recommendations to this Court on these issues: (1) the undisputed material terms of the agreement; (2) whether or not there is any material dispute as to the actual terms of the settlement agreement, and if so the specific nature and extent of any such dispute(s); (3) whether or not this agreement is fair;  and (3) based on these and any other relevant factors, whether or not the agreement should be judicially approved. The Special Master shall address Plaintiffs' concern that, if the agreement is enforced, their counsel would not know how to distribute the lump sum payment among the individual drivers.  Furthermore, in the event that she recommends enforcement of the agreement, the Special Master shall recommend terms for a Partial Judgment that would be entered in the event that this Court ultimately approves the agreement.  The Special Master is to provide the Court with whatever recommendations may be relevant as to how this agreement may be implemented, if it is to be enforced.

These written recommendations shall be provided to all parties and filed with the Court on or before May 19, 2003.

### III.  Remaining Issues

According to her January 30, 2003 Report, the Special Master expected to conclude the evidence on the issues of split shift differential time and regular driver shuttle time at hearings scheduled for February 24, 25, and 26, 2003. The Special Master is directed to file her Report on these two issues on or before May 19, 2003.  This Report shall contain her evaluation of these two issues, including compilation of the appropriate figures, and Findings of Facts and Conclusions of Law, as mandated by this Court's Order of Reference.  As required by FED.R.CIV.P. 53(3)(1), the

7

Special Master must file with the Report a transcript of the proceedings and of the evidence and the original exhibits.

### IV.  Imposition of Stay on Further Action Except that Taken by Special Master

Since this Court's November 30, 2001 appointment of a special master, Plaintiffs have filed several motions, to-wit:  Motion for an Order for Reinstatement of 39 Dismissed Bus Drivers (Docket No. 327), Second Motion to Compel Payment of Wages and Damages (Docket No. 333), Motion to Deny Statute of Limitations Defense (Docket No. 350), and Motion for Order Speeding Special Master's Report (Docket No. 358).

The Court has now imposed a deadline of May 19, 2003 for completion of work by the Special Master and submissions to the Court by her.  Pending its review of the Special Master's findings and recommendations, this Court will not consider the four motions mentioned in the preceding paragraph and will accept no further motions or briefs from the parties.  Furthermore, all action, except the evidentiary hearing before the Special Master and other work to be performed by the Special Master, as outlined herein,  is **stayed in this matter pending further notice from the Court.**

**WHEREFORE,** for the reasons stated herein, the City's Second Motion to Enforce Settlement Agreement (Docket No. 335) is **taken under advisement;**

**IT IS FURTHER ORDERED**  that the Special Master shall hold an evidentiary hearing on the extra board shuttle travel time issue and submit her findings and recommendations, as directed herein, to this Court, on or before May 19, 2003;

**IT IS FURTHER ORDERED**  that the Special Master shall file her Report on the issues of

split shift differential time and regular driver shuttle time, on or before May 19, 2003. This Report shall contain her evaluation of the issues, including compilation of the appropriate figures, and Findings of Facts and Conclusions of Law, as mandated by this Court's Order of Reference.

**IT IS FURTHER ORDERED** that, as provided by FED.R.CIV.P. 53(e)(2), within ten days after being served with notice of the filing of the Report, any party may serve written objections thereto upon the other parties. The scope of the objections, if any, should also include the findings and recommendations of the Special Master on the extra board shuttle travel time settlement agreement issue.

**IT IS FURTHER ORDERED** that, pending its review of the Special Master's findings and recommendations, this Court will accept no further motions or briefs from the parties, and, with the exception of the evidentiary hearing before the Special Master and other work to be performed by the Special Master, all action is hereby **stayed in this matter pending further notice from the Court.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**