UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 3 0 2003

*R. Robert M. ...*
CLERK

UNITED TRANSPORTATION UNION
LOCAL 1745, et al.,

                Plaintiffs,

v.

CITY OF ALBUQUERQUE, et al.,

                Defendants,

*Consolidated With*

JIMMY S. ANDERSON, et al.,

                Plaintiffs,

v.

CITY OF ALBUQUERQUE, et al.

                Defendants.

CIV No. 96-716 LH/ACT-ACE

CIV No. 99-208 MV/LFG-ACE

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court following its review of the Report of Special Master on Issue of Compensation for Travel Time for Regular Drivers (Docket No. 363). The Court having reviewed Plaintiffs' Objections to Special Master's Report (Docket No.375) and Defendant

1



Albuquerque's Exceptions to Special Master's Reports (Docket No. 374), and being fully advised

in the premises, concludes that the findings of fact, conclusions and recommendations contained in

this report of the Special Master shall be accepted and adopted as the Order of this Court.


## I.  Legal Standards

In this action to be tried without a jury, the Court must accept the master's findings of facts

unless clearly erroneous.  9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 5313[3][d]

(3d ed. 2003).  A finding is "clearly erroneous" if it is without substantial evidentiary support or was

induced by an erroneous application of the law.  *Id.*  A reviewing court may set aside a finding only

if, based on the entire record, with due regard for the special master's opportunity to judge

credibility, the court is convinced that there is not substantial evidence to support the finding.  In the

absence of clear error, a special master's findings must be affirmed, even if the court thinks they are

against the weight of the evidence, or is convinced that it would have decided the case differently.

On the other hand, a special master's conclusions of law are not entitled to deference by the

referring district court and this Court's scrutiny of them is essential.  *See Polin v. Dun & Bradstreet,

Inc.*, 634 F.2d 1319, 1321 (10th Cir. 1980).

The Tenth Circuit affirmed that compensation for driver time spent traveling on City shuttles

to and from relief points at the beginning and end of a split shift period is compensable.  *United

Transportation Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120 (10th Cir. 1999).

This matter was specifically referred by this Court to a Special Master for an accounting

determination of backpay due to Plaintiffs (Docket No. 297).  That opinion noted that "compilation

of the appropriate figures is  the primary remaining task."  *Id.* at 5.  It also noted that there are

inherent difficulties in this type of case where records may be incomplete, and that reasonable

estimates are permitted under the Fair Labor Standards Act. *Id.* at 6.[1] Finally, it stated that damages

for three categories of compensation "shall be the precise focus of the Special Master in his/her

determination of wages due to Plaintiffs at this juncture." *Id.* at 8. In sum, the reports of the Special

Master are primarily factual determinations and shall be evaluated accordingly.

## II.  Scope of Special Master Report

The City's objections to this report relate only to the appropriate amount of interest that

should be awarded. The City argues that it has operated in good faith in these proceedings. Plaintiffs

make no objections, specific only to this particular report, but rather, state general objections to the

entire procedure employing utilization of a Special Master.

In this report, the Special Master heavily relies upon Exhibits 1A, 21 and 23. For ease of

reference, these will be attached to this Memorandum Opinion and Order. In addition, pursuant to

the order of the Special Master, the City submitted further calculations to the Court, pursuant to letter

dated June 25, 2003.[2] These four charts, Documents 1-4, will also be attached to this Memorandum

Opinion and Order. As to all categories of compensation, the Special Master recommended that

interest be awarded, but declined to specify a rate or date that should interest should commence

running.

---

[1] The opinion empowered the Special Master to make reasonable estimates, for example, as to the frequency of compensable shuttle trips each day.

[2] The City supplemented the record with these calculations, as ordered by the Special Master, with permission for the supplementation granted by this Court's order dated September 4, 2003 (Docket No. 378).

**A.  Travel Time for May 1, 1994 to September 10, 1999 (except for "Gap Period")**

The Special Master recommends that this Court order payment of travel compensation to the drivers, as indicated on Exhibits 21 and 23, plus a 10% increase to reflect a more accurate estimate of travel time to and from relief points between segments of a split run.  This recommendation covers the time period of May 1, 1994 to September 10, 1999, except for the "Gap Period" of October 2, 1995 to January 8, 1996.

**B.  "Gap Period" (October 2, 1995 to January 8, 1996)**

This compensation is for drivers who were required to ride regular City buses rather than shuttles, during this period, for going to and from relief points at the beginning and end of a split shift period.  The Special Master ordered the City to calculate travel time compensation due each driver in this category, and then to double the times to relief points as contained in the published shuttle schedules.  The City submitted calculations for this category of compensation, attached to a June 25, 2003 letter to the Court.  These calculations are contained in Document 1, attached hereto. The Special Master recommended  that the Court order the compensation contained in Document 1.  The grand total of this compensation is $33,650.69.

**C.  Travel Time For Commuting By Bus to Downtown Relief Points from July 10, 1995 to October 1, 1995**

This compensation is for drivers who were required to ride regular City buses rather than shuttles,  during which time shuttles did not operate to these downtown relief points.  The City submitted calculations for this category of compensation, attached to a June 25, 2003 letter to the Court.  These calculations are contained in  Document 2, attached hereto.  The Special Master

4

recommended that the Court order the compensation contained in Document 2. The grand total of this compensation is $2,766.23.

### D.  Travel Time for All Drivers from July 14 to July 20, 1996

The City submitted calculations for this category of compensation, attached to a June 25, 2003 letter to the Court. These calculations are contained in Document 3, attached hereto. The Special Master recommended that the Court order the compensation contained in Document 3. The grand total of this compensation is $1,235.45.

### E.  Travel Time for All Drivers from September 10, 1999 to October 2, 1999

The City submitted calculations for this category of compensation, attached to a June 25, 2003 letter to the Court. These calculations are contained in Document 4, attached hereto. The Special Master recommended that the Court order the compensation contained in Document 4. The grand total of this compensation is $1,019.93.

### III.  Review of Factual Basis for Recommendation

As noted by the Special Master, the methodology used by the City in calculating the compensation due is contained in Exhibit 1A[3], attached hereto. The Special Master's Findings of Fact describe the bid period system, including relief points, the type of runs and shifts that drivers could make, travel time on shuttles and on City buses. She describes periods of time that were not, but should be, included in the City's compensation calculations. For example, she stated that any

---

[3] This exhibit is entitled "Travel Time Chart Preparation".

unworked guarantee time was applied in arriving at total compensation in Exhibits 21 and 23. (SMFOF 5). She indicated that drivers spent more actual time on shuttles than was indicated on the published shuttle schedules and that therefore, the City's estimated travel times understated reasonable travel time by approximately ten percent on the average. (SMFOF 10 and 11).

Referring to Exhibit 1A, the Special Master described that in some instances the City kept precise records and that in some instances it did not. (SMFOF 5). She indicated how estimates were made for the compensation calculations contained in Exhibits 21 and 23. (SMFOF 5)

Having carefully reviewed the Findings of Fact of the Special Master. I conclude that they are not clearly erroneous. There appears to be substantial evidentiary support for these findings and it appears that the Special Master has correctly applied relevant law. The Plaintiffs have not sustained their heavy burden to show that these factual findings are clearly erroneous. For these reasons, these findings shall be accepted.

## IV.  Review of Conclusions of Law

The Special Master concluded that, except for application of unworked guarantee time and the utilization of shuttle times which were slightly deficient. the City's methodology for determining travel time for regular drivers as shown on Exhibit 1A is reasonable. (SMCOL 1). The Special Master specifically noted that, because the City did not keep precise records, it would not be equitable to apply unworked guarantee time to reduce the calculated split shift compensation. (SMCOL 5).

As noted above, this Court must  may not accord the Special Master's legal conclusions deference and must carefully scrutinize them.

I have carefully reviewed these conclusions along with the evidence, including the exhibits, before the Court. I conclude that an approximate award based on reasonable inferences forms a satisfactory surrogate for unquantified and unrecorded actual times, and that acceptance by the Court of the recommended approximated award of the Special Master is permissible. *See Brock v. Seto*, 790 F.2d 1446, 1449 (9th Cir. 1986). The work tasks at issue are generally uniform, which lend support for this type of approach.

Although delineated as "Conclusions of Law", these conclusions and the recommendations of the Special Master are primarily factual in nature. There appears to be substantial evidentiary support, to the extent that these are factual in nature. It appears that the Special Master has correctly applied relevant law. There are no objections from either party as to these specific conclusions and recommendations. For these reasons, these shall be accepted.

## V. Liquidated Damages

The issue of liquidated damages as to these types of compensation has been stayed by the Court, pending its receipt of reports from the Special Master. (See Docket No. 297). It is now appropriate to consider this issue.

The Court is aware that Section 216's provision for liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Hultgren v. County of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990). The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 20 U.S.C. §216(b). However, if the employer had a good faith belief that its

7

actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. *See* 29 U.S.C. § 260; *see also Department of Labor v. City of Sapulpa, Okla.*, 30 F.3d 1285, 1289 (10th Cir. 1994).

In its October 3, 2001 Memorandum Opinion and Order, the Court indicated that once it had received the report of the Special Master, that it would consider whether or not Plaintiffs may be entitled to liquidated damages, only from the date of the Tenth Circuit opinion, on May 29, 1999, forward. (Docket No. 297). The Special Master found that the City began compensating for travel time to and from relief points as of October 2, 1999, and she therefore did not address any issue as to reasonableness of compensation for travel time after this date. (SMFOF 12). Except for the application of unworked guarantee time and the use of shuttle times that were slightly too short, the Special Master concluded that the City's methodology for determining travel time for regular drivers is reasonable. (SMCOL 1). Adjustments for these deficiencies were made in the report (SMCOL 3, 4 and 5). The Special Master concluded that the City operated in good faith in terms of methodology used and the amount calculated for unpaid travel time. (SMCOL 8). She indicated that the reason that the City did not pay regular drivers split shift compensation several years ago on this claim is because they refused to accept the amounts tendered as accurate (SMCOL 8), an indication of reasonable grounds for the City's actions.

The Court had indicated that following the appeal in this matter, it would only consider Plaintiffs' entitlement to such damages from May 29, 1999 forward, and according to the findings of the Special Master, the City began compensating drivers for travel time to and from relief points as of October 2, 1999. Given all of these facts and circumstances, the Court concludes that there is no basis for an award of liquidated damages.

## VI. Interest

In the first of these consolidated cases. CIV No. 97-716, Plaintiffs requested neither pre- or post-judgment interest, although they sought both types of interest in the second lawsuit. CIV No. 99-208. The actual work, entitling drivers to compensation, was done as long ago as mid-1995. Because the Special Master considered the rate and length of time for interest to be awarded to be strictly a legal issue, she entered no findings or recommendations on the issue of interest.

Although ordinarily awarded in federal cases, prejudgment interest is not recoverable as a matter of right. *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000). The City has indicated that its willingness to pay interest from the date of November 30, 2001 to the date of judgment at the post-judgment rate equal to the weekly average 1-year constant maturity Treasury Yield published by the Board of Governors of the Federal Reserve System.

The Court is cognizant that an employee should not be penalized for the lost use of money that should have been paid to him/her long ago. On the other hand, many of these Plaintiffs did not seek pre-judgment interest. The Special Master indicated that the City "did not pay the drivers the amounts it calculated were due, although those calculations were completed several years ago, on the ground that the Plaintiffs refused to accept the amounts tendered as accurate." (SMCOL. 8). It appears to the Court that the City was prepared to pay "several years ago" approximately what the Special Master now recommends. Despite the fact that part of the delay in payment has apparently been partly occasioned by lack of cooperation of Plaintiffs, and despite the fact that many of these Plaintiffs did not seek pre-judgment interest, the City states that it would not object to interest being awarded from the date of November 30, 2001 forward, to all Plaintiffs in this category. In light of these circumstances and the applicable law, the Court considers this approach reasonable, and it will

9

be applied to this category of compensation due to Plaintiffs. Accordingly, prejudgment interest from November 30, 2001 to the date of judgment is hereby awarded for this category of compensation.

**WHEREFORE, IT IS HEREBY ORDERED** that the Report of Special Master on Issue of Compensation for Travel Time for Regular Drivers (Docket No. 363) is hereby accepted and adopted as the order of this Court.

**IT IS FURTHER ORDERED** that prejudgment interest is awarded from November 30, 2001 to the date of judgment.

**IT IS FURTHER ORDERED** that any and all objections to this Memorandum Opinion and Order shall not be filed with this Court until after the final report[4] of the Special Master has been submitted to the Court, as ordered in a Court order filed simultaneously with this one. The parties will be afforded an opportunity to object to the final report of the Special Master after it has been submitted to the Court. Once the Court has filed its written opinion as to the final report of the Special Master, the parties will then be given an opportunity to file objections, if any, to all Court opinions and orders that evaluated the Special Master's reports, including this Memorandum Opinion and Order. Consequently, until further notice from the Court, the stay imposed by the Court in it April 17, 2003 order. of any further filings by the parties in this matter, shall remain in force and effect.

---

[4] This final report will be filed by the Special Master after she conducts an allocation hearing on the amount due individual drivers following settlement of their claims for compensation for extra board driver travel time.

10

**IT IS SO ORDERED.**

**SENIOR UNITED STATES DISTRICT JUDGE**

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**