UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 3 0 2003

CLERK

**UNITED TRANSPORTATION UNION**
**LOCAL 1745, et al.,**

          **Plaintiffs,**

v.                                  CIV No. 96-716 LH/ACT-ACE

**CITY OF ALBUQUERQUE, et al.,**

          **Defendants,**

*Consolidated With*

**JIMMY S. ANDERSON, et al.,**

          **Plaintiffs,**

v.                                  CIV No. 99-208 MV/LFG-ACE

**CITY OF ALBUQUERQUE, et al.**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for its review of two reports of the Special Master on the issue of compensation for split shifts for extra board and regular drivers (Docket Nos. 361 and 362). The Court, having reviewed Plaintiffs' Objections to Special Master's Report (Docket No. 375) and Defendant Albuquerque's Exceptions to Special Master's Reports (Docket No. 374), and



being fully advised in the premises, concludes that the findings of fact, conclusions and recommendations as contained in these two Special Master's reports shall be accepted and adopted as the Order of this Court.

In addition, Plaintiffs' Second Motion and Memorandum for Order Compelling Payment of Wages and Damages (Docket No. 333) and Motion for Order Speeding Special Master's Report (Docket No. 358) are also before this Court, having previously been stayed by order of this Court on April 17, 2003 (Docket No. 360). The Court, having considered these motions and being fully advised in the premises, concludes that they are rendered moot by this immediate order and are therefore **denied**.

## I. Legal Standards

In this action to be tried without a jury, the Court must accept the master's findings of facts unless clearly erroneous. 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 53.13[3][d] (3d ed. 2003). A finding is "clearly erroneous" if it is without substantial evidentiary support or was induced by an erroneous application of the law. *Id.* A reviewing court may set aside a finding only if, based on the entire record, with due regard for the special master's opportunity to judge credibility, the court is convinced that there is not substantial evidence to support the finding. In the absence of clear error, a special master's findings must be affirmed, even if the court thinks they are against the weight of the evidence, or is convinced that it would have decided the case differently.

On the other hand, a special master's conclusions of law are not entitled to deference by the referring district court and this Court's scrutiny of them is essential. *See Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319, 1321 (10th Cir. 1980).

2.

The Court notes that the City of Albuquerque ("the City") stipulated to liability for these categories of compensation[1], and that accordingly, this leaves simply the factual matter of how much compensation is due each driver. As noted in the Order of Reference (Docket No. 299) at pages 2-3:

> [T]he City of Albuquerque stipulated to its liability as to the compensability of time spent by a driver on a split shift period of less than fifty (50) minutes and the compensability of extra board shuttle travel time (Docket No. 298). The Special Master shall evaluate what damages flow from these two areas of liability for the City as well as for travel time on shuttles to and from relief points at the beginning and end of their split shift periods.

As noted in a Memorandum Opinion and Order (Docket No. 297), this matter was specifically referred to a Special Master for an accounting determination of backpay due to Plaintiffs. That opinion noted that "compilation of the appropriate figures is the primary remaining task." *Id.* at 5. It also noted that there are inherent difficulties in this type of case where records may be incomplete, and that reasonable estimates are permitted under the Fair Labor Standards Act. *Id.* at 6.[2] Finally, it stated that damages for three categories of compensation "shall be the precise focus of the Special Master in his/her determination of wages due to Plaintiffs at this juncture." *Id.* at 8. In sum, the reports of the Special Master are primarily factual determinations and shall be evaluated accordingly.

## II. Issue of Compensation for Split Shifts for Regular Drivers

### A. Scope of Special Master Report and of Objections Thereto

The City has no objections to this report. The City maintains that it stipulated on approximately November 30, 2001 to liability for basically the amount of compensation now

---

[1] *See* Stipulation as to Liability for Time Spent on a Split Shift Period of Under Fifty Minutes and Extra Board Driver Compensable Shuttle Travel Time, as Set Forth Below, Docket Number 298.

[2] The opinion empowered the Special Master to make reasonable estimates.

recommended by the Special Master. The City agrees to an award of interest on this amount, based on the weekly average 1-year constant maturity Treasure yield from the date of November 30, 2001. The City maintains that its good faith on this issue is beyond dispute.

As objections, Plaintiffs present 16 paragraphs of findings and conclusions, and object to the Special Master's rejection of these. (See Plaintiffs' Objections to Special Master's Report at 19-22, Docket No. 375). Plaintiffs provide no transcript references or any factual or legal support for their proffered findings and conclusions. They make such statements as that the City's methodology is "ineffective, slow, unconvincing, and inaccurate", yet provide no basis for these subjective criticisms.

As noted above, this particular report covers the topic of compensation for regular drivers for split shifts. A compensable split shift for purposes of this action is any period of time of one hour or less between the end of one run and the beginning of the next run, excluding shuttle travel time to and from relief points. Travel time is deducted before determining the length of the split between shifts. (SMCOL 1).

In this report, the Special Master heavily relies upon Exhibits 1B, 14 and 31. For ease of reference, these exhibits will be attached to this Memorandum Opinion and Order.

The Special Master ordered the City to calculate the compensation due to "Richard Daughtery" for a run referred to in Finding of Fact 7. According to a recent affidavit filed by the City (Docket No. 379), it did not employ anyone with this name during the relevant time period. Accordingly, any and all mention of "Richard Daughtery" in this order of the Special Master shall be disregarded.

### B. Review of Factual Basis for Recommendation

As noted by the Special Master, the methodology used by the City in calculating the compensation due is contained in Exhibit 1B, attached hereto. The Special Master's Findings of Facts often cite to hearing transcripts in their description of this category of compensation. The Special Master noted that after November 1, 1997, the City began compensating drivers with split shifts of less than an hour as continuous time, and that she therefore did not consider any evidence after this date on this issue.

The Special Master indicated that if a driver's straight or split run resulted in less than 40 hours in a week, the driver would nevertheless be "guaranteed" payment for the full 40 hours. (SMFOF 4). She found that the City's calculations applied unworked guarantee time to the amounts due each driver. (SMFOF 5). The report details the records maintained by the City in this regard. (SMFOF 12-16). She noted that Exhibit 14 shows the additional compensation due to regular drivers for splits an hour or less without applying unworked guarantee time. (SMFOF 17).

Finding Number 19 states that Exhibit 31 is a reasonable and accurate estimate of compensation[3] due regular drivers with split shifts of an hour or less, from April 3, 1993 to November 7, 1997, after addition of amounts due to eleven drivers for split shifts an hour or less without applying unworked guarantee time, as shown in Exhibit 14.

The Special Master recommends that interest on the compensation be paid in an amount to be determined by the Court.

Having carefully reviewed the Findings of Fact of the Special Master, I conclude that they are not clearly erroneous. There appears to be substantial evidentiary support for these findings and

---

[3] The total of compensation shown on this exhibit is $53,265.50.

it appears that the Special Master has correctly applied relevant law. The Plaintiffs have not sustained their heavy burden to show that these factual findings are clearly erroneous. For these reasons, these findings shall be accepted.

### C. Review of Conclusions of Law

The Special Master approved the City's methodology as shown in Exhibit 1B[4], with the exception of its failure to deduct travel time before determining the length of a split shift.

In computing the amount of time between split runs, the Special Master has concluded that travel time must be deducted before determining the length of time between runs, to determine if it is less than an hour, and thus compensable. The City has posed no objection to this approach and consequently it will be accepted. With this one exception, the Special Master concluded that the methodology was reasonable and accurate.

The Special Master concluded that all qualifying split runs for the relevant periods have been included by the City in Exhibit 31. (SMCOL 3). She concluded that Exhibit 31 reflects the amount of additional compensation due to regular drivers for split shifts of less than one hour, after deducting travel time. (SMCOL 3). She also concluded that the City should pay compensation for the split shift time accrued, as reflected in Exhibit 31, and that no deduction for unworked but paid guarantee time should be made. Finally, she concluded that the additional amounts reflected in Exhibit 14 should be added to the compensation due reflected in Exhibit 31. (SMCOL 4).

The Special Master concluded that the City operated in good faith in terms of methodology

---

[4] The Court construes Conclusion of Law 2 as containing a typographical error, wherein the Special Master refers to Exhibit 1A instead of Exhibit 1B.

used to calculate the split shift compensation due. She noted that, while these calculations were completed several years ago, the City did not pay Plaintiffs at that time because they did not agree as to the accuracy of the calculations. (SMCOL 7). The Special Master concluded that whether or not failure to pay this compensation previously, under these circumstances, would constitute bad faith under the Fair Labor Standards Act is strictly a legal issue, outside of her Order of Reference. Similarly, while the Special Master concluded that the City should be required to pay interest on this category of compensation, under the same "strictly legal" rationale, she declined to address the rate of interest and the date from which interest should be calculated.

Although delineated as "Conclusions of Law", these conclusions and the recommendations of the Special Master are primarily factual in nature. There are no specific objections from either party as to these conclusions and recommendations. The Court has carefully scrutinized them and concludes that they shall be accepted.

### III. Issue of Compensation for Split Shifts for Extra Board Drivers

#### A. Scope of Special Master Report and of Objections Thereto

This report explains that extra board drivers do not have regular, assigned bus runs, but that they act as substitutes for regular drivers who are unavailable to drive for some reason such as vacation, extended absence or sick leave. (SMFOF 1). It recommends that this Court order split shift compensation to extra board drivers as listed in Attachment A to the report, and that this Court allow interest on the compensation.

In addition to Attachment A, this report also relies upon Exhibit 13. For ease of reference, these exhibits will be attached to this Memorandum Opinion and Order. In addition, pursuant to the

7

order of the Special Master, the City submitted further calculations to the Court for the 46 drivers listed in Attachment A, pursuant to letter dated 25, 2003. These calculations are contained in Document 5, which will also be attached to this Memorandum Opinion and Order.[5]

The City does not object to the recommendations contained in this report and again notes that its good faith is not an issue in this recommendation.

Plaintiffs pose the same non-specific, unsupported objections to this report, namely the Special Master's failure to adopt 16 paragraphs of findings and conclusions (See Plaintiffs' Objections to Special Master's Report at 19-22, Docket No. 375).

### B. Review of Factual Basis for Recommendation

The report indicates that the City kept incomplete records insofar as identifying split shifts of less than an hour worked by extra board drivers, but that it did maintain various types of records about split shifts worked by regular drivers. (SMFOF 2, 8, 9). After October 1, 1997, the City began paying drivers continuous time for any splits of an hour or less in regular split runs. (SMFOF 3). The City provided no calculations estimating the amount of compensation due extra board drivers for split shifts of less than one hour and neither of the parties proposed any particular methodology for estimating compensation due extra board drivers for split shifts. (SMFOF 4). The Special Master cited testimony wherein extra board drivers testified about working these types of shifts. (SMFOF 5, 6). Based on a system of averaging the evidence before her, the Special Master found that a reasonable estimate of time spent by extra board drivers in splits of an hour or less between

---

[5] The City supplemented the record with these calculations, as ordered by the Special Master, with permission for the supplementation granted by this Court's order dated September 4, 2003 (Docket No. 378).

segments of regularly scheduled split runs is 36 minutes per week per driver. (SMFOF 10).

Having carefully reviewed the Findings of Fact of the Special Master, I conclude that they are not clearly erroneous. There appears to be substantial evidentiary support for these findings and it appears that the Special Master has correctly applied relevant law. The Plaintiffs have not sustained their heavy burden to show that these factual findings are clearly erroneous. For these reasons, these findings shall be accepted.

### C. Review of Conclusions of Law

The Special Master concluded that the extra board drivers satisfied their burden of proof to establish that they have performed work for which they have not been paid, and that they have adequately shown the amount and extent of that work. (SMCOL 1). She noted that the City failed to keep accurate records of the work performed, and that it failed to negate reasonable inferences in the evidence as to the approximate amount of work done per driver. (SMCOL 2). She concluded it was therefore necessary to estimate the amount of work done per driver based on the reasonable inferences in the evidence. (SMFOF 2). She concluded that it was reasonable to estimate the average amount of time spent by extra board drivers in splits of an hour or less between shift segments by considering driver testimony and available records. (SMCOL 3). As noted above, on this basis, she concluded that each extra board driver should be compensated for 36 minutes for each week in a bid period that s/he was assigned to the extra board at the overtime rate of pay. (SMFOF 4).

Attachment A to her report lists drivers eligible for this compensation as well as the total minutes of compensation due to the driver from May 1, 1994 to November 8, 1997. (SMCOL 4).

The Special Master did not consider any evidence on this issue except for this time period. (SMCOL 4). The Special Master directed the City to calculate the wages due each driver listed on Attachment A at the overtime rate of time and a half of base pay (SMCOL 6). The City submitted calculations for this category of compensation, attached to a June 25, 2003 letter to the Court. The calculations are contained in Document 5, attached hereto.[6] The Special Master recommended that the Court order the compensation contained in Document 5. The grand total of this compensation is $19,759.28. The Special Master concluded that interest should be awarded on this compensation at a date and rate as set by this Court.

Although delineated as "Conclusions of Law", these conclusions and the recommendations of the Special Master are primarily factual in nature. There appears to be substantial evidentiary support, to the extent that these are factual in nature. It appears that the Special Master has correctly applied relevant law. There are no objections from either party as to these specific conclusions and recommendations. The Court has carefully scrutinized them and concludes that they shall be accepted.

## IV. Liquidated Damages

The issue of liquidated damages as to these types of compensation has been stayed by the Court, pending its receipt of reports from the Special Master. (See Docket No. 297). It is now appropriate to consider this issue.

The Court is aware that Section 216's provision for liquidated damages is intended in part

---

[6] The City supplemented the record with these calculations, as ordered by the Special Master, with permission for the supplementation granted by this Court's order dated September 4, 2003 (Docket No. 378).

to compensate employees for the delay in payment of wages owed under the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Hultgren v. County of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990). The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 20 U.S.C. §216(b). However, if the employer had a good faith belief that its actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. *See* 29 U.S.C. § 260; *see also Department of Labor v. City of Sapulpa, Okla.*, 30 F.3d 1285, 1289 (10th Cir. 1994).

In its October 3, 2001 Memorandum Opinion and Order, the Court indicated that once it had received the report of the Special Master, that it would consider evidence as to whether or not Plaintiffs may be entitled to liquidated damages, only from the date of the Tenth Circuit opinion, on May 29, 1999, forward. (Docket No. 297). According to the Special Master's report, after October 1, 1997 and November 1, 1997, the City began compensating drivers with splits of less than an hour as continuous time. The Special Master concluded that the City operated in good faith in terms of methodology used to calculate the split shift compensation due regular drivers. She indicated that the reason that the City did not pay regular drivers split shift compensation several years ago on this claim is because they did not agree as to the accuracy of the calculations, an indication of reasonable grounds for the City's actions.

Given these facts and circumstances, the Court concludes that there is no basis for an award of liquidated damages. The Court had indicated that following the appeal in this matter, it would only consider Plaintiffs' entitlement to such damages from May 29, 1999 forward, and according to the findings of the Special Master, before that date, the City began compensating drivers with splits

of less than an hour as continuous time, thereby mooting any claims after that date.

## V. Prejudgment Interest

In the first of these consolidated cases, CIV No. 97-716, Plaintiffs did not request pre- or post-judgment interest, although Plaintiffs in the second lawsuit, CIV No. 99-208, sought both types of interest. The actual work, entitling drivers to compensation for split shifts, was performed as long ago as April of 1993. Because the Special Master considered the rate and length of time for interest to be awarded to be strictly a legal issue, she entered no findings or recommendations on this.

Although ordinarily awarded in federal cases, prejudgment interest is not recoverable as a matter of right. *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000). The City has nonetheless indicated a willingness to pay interest from the date of November 30, 2001 to the date of judgment.

The Court is cognizant that an employee should not be penalized for the lost use of money that should have been paid to him/her long ago. On the other hand, many of these Plaintiffs did not seek pre-judgment interest. As above-noted, the Special Master indicated that although the City completed its split shift calculations several years ago, it did not immediately pay employees because the Plaintiffs did not agree to accept the calculations as accurate. In other words, it appears to the Court that the City was prepared to pay "several years ago" approximately what the Special Master now recommends. Despite the fact that part of the delay in payment has apparently been partly occasioned by lack of cooperation of Plaintiffs, and despite the fact that many of these Plaintiffs did not seek pre-judgment interest, the City states that for both regular and extra board drivers, it would not object to interest being awarded from the date of November 30, 2001 forward, to all Plaintiffs.

In light of these circumstances and the applicable law, the Court considers this approach reasonable, and it will be applied to this category of compensation due to Plaintiffs. Accordingly, prejudgment interest, from November 30, 2001 to the date of judgment, shall be awarded for split shift compensation for regular and extra board drivers.

### VI. Plaintiff's Second Motion and Memorandum for Order Compelling Payment of Wages and Damages (Docket No. 333)

This motion was stayed by order of this Court on April 17, 2003 (Docket No. 360). The Court, having considered this motion and being fully advised in the premises, concludes that it is rendered moot by this immediate order, and by orders filed simultaneously with this one, and is therefore **denied**.

A prior motion along these lines, i.e. Plaintiffs' Motion for An Order Requiring Payment of Back Pay and Liquidated Damages (Docket No. 282), was granted insofar as the matter was referred to a Special Master for an accounting determination of backpay due to Plaintiffs (See Memorandum Opinion and Order, Docket No. 297). This immediate order, and orders filed simultaneously with this one, largely accept the recommendations and findings of the Special Master in her relevant reports. All orders filed on this date order the City to pay backpay to Plaintiffs, and in some instances, with prejudgment interest.

All prior motions of Plaintiffs seeking liquidated damages were stayed, pending the Court's receipt of the reports of the Special Master. The issue of liquidated damages is addressed in this immediate order and by orders filed simultaneously with this one. In short, Plaintiffs' motion seeking decisions on the backpay and liquidated damages issues have now been decided, and

accordingly this second motion is **denied as being moot.**

**WHEREFORE, IT IS HEREBY ORDERED** that the Report of Special Master on Issue of Compensation for Split Shifts for Regular Drivers (Docket No. 362) and the Report of Special Master on Issue of Compensation for Split Shifts for Extra Board Drivers (Docket No. 361) are hereby accepted and adopted as the order of this Court.

**IT IS HEREBY ORDERED** that Plaintiffs shall not be awarded liquidated damages on their claims for compensation for split shifts for extra board drivers and regular drivers.

**IT IS FURTHER ORDERED** that the City shall pay pre-judgment interest on the amounts awarded herein, at the weekly average 1-year constant maturity Treasury yield from November 30, 2001 to the date of judgment.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion and Memorandum for Order Compelling Payment of Wages and Damages (Docket No. 333) and Plaintiffs' Motion for Order Speeding Special Master's Report (Docket No. 358) are rendered moot by this immediate order and are therefore **denied.**

**IT IS FURTHER ORDERED** that any and all objections to this Memorandum Opinion and Order shall not be filed with this Court until after the final report[7] of the Special Master has been submitted to the Court, as ordered in a Court order filed simultaneously with this one. The parties will be afforded an opportunity to object to the final report of the Special Master after it has been submitted to the Court. Once the Court has filed its written opinion as to the final report of the

---

[7] This final report will be filed by the Special Master after she conducts an allocation hearing on the amount due individual drivers following settlement of their claims for compensation for extra board driver travel time.

Special Master, the parties will then be given an opportunity to file objections, if any, to **all** Court opinions and orders that evaluated the Special Master's reports, including this Memorandum Opinion and Order. Consequently, until further notice from the Court, the stay imposed by the Court in it April 17, 2003 order, of any further filings by the parties in this matter, shall remain in force and effect.

**IT IS SO ORDERED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**